[No. 1855.]

ADOLPH BLOCK *v*. THE STATE.

THEFT — FACT CASE.— See the statement of the case for evidence *held* insufficient to support a conviction for misdemeanor theft.

APPEAL from the District Court of Jefferson. Tried below before the Hon. W. H. Ford.

The conviction was for the theft of a jam pole of the value of $2.50, the property of Patillo Higgins, in Jefferson county, Texas, on the 1st day of November, 1884. The penalty assessed against the appellant was a fine of $25 and confinement in the county jail for the period of twenty-four hours.

McKinley, the first witness for the State, testified that in the month of ———, 1884, in company with Patillo Higgins and Constable Tevis, of Orange county, who had a search warrant, witness went to the defendant's house, which was on the bank of the Neches river on the Orange county side, in search of a jam pole. The pole was found under the defendant's house, where it could be seen

without difficulty.   Defendant was not at home.   One Jim Smith, who was at the house, told the constable, Higgins and witness that he and defendant, while navigating the Neches river below Beaumont in a skiff, found the pole floating in the river; that they took it from the river and placed it under the house, and that neither he nor the defendant claimed it.   He made no objection to the removal of the pole.   Defendant reached home before the party left, but said nothing about the pole.   Tevis testified substantially as did McKinney.

Patillo Higgins, for the State, corroborated McKinney and Tevis as to the recovery of the jam pole.   He testified, further, that about 6 o'clock on the evening before he missed his pole, he tied his boat to the bank of the Neches river, in the town of Beaumont. Defendant's boat was then secured to the bank alongside and near witness's boat.   Witness left his jam pole in his boat, one end under the seat, and the other end extending over the rear of the boat, but so secured that it could not have drifted out, fallen overboard or otherwise been removed without the agency of some one.   Witness did not know who removed the jam pole or how it got out of the boat.   The tide ran up stream with a south wind when witness tied his boat, and the south wind prevailed as long through that night as the witness was up.   The up-tide, with which all floating bodies would travel, ran opposite from the direction in which the defendant lived.   Witness did not see the defendant on the evening or night he lost his pole.   It was the custom of river men to recover escaping property of other river men, and hold it for delivery.   The State closed.

James Smith testified, for the defense, in substance, that when he and defendant left Beaumont for the defendant's home, in the defendant's boat, on the night of the alleged theft, they saw, as they passed it, Higgins's boat, tied to the bank.   This was between 9 and 10 o'clock.   There was then no jam pole in Higgins's boat.   The tide was then running down stream.   Witness rowed, and defendant steered the boat they were in.   When they reached Snaggy Point, about three miles below Beaumont, the boat struck the jam pole described in the indictment.   Remarking that there was a good jam pole which had escaped from some one, witness caught it, and he and defendant pulled it into the boat, took it home and pushed it under the house, leaving it in plain view.   Some time afterwards, in defendant's absence, Constable Tevis, Higgins and McKinley came to defendant's house, hunting the pole.   Witness showed it to them, told them how it came into defendant's possession, that de-

fendant did not claim it, and that they were at liberty to take it if it belonged to them.

The motion for new trial was based upon the question decided in the opinion,— but, unfortunately, fails to inform the inquiring mind whether a " jam pole " is a nautical or a culinary implement, or in what sort of jam its use and value become apparent.

*T. J. Russell* and *H. W. Greer*, for the appellant.

*J. H. Burts*, Assistant Attorney-General, for the State.

WILLSON, JUDGE. Without reciting or discussing the evidence upon which the conviction in this case is founded, we must say that our judgment upon it differs from that of the learned judge before whom the case was tried upon the facts as well as the law, a jury having been waived. We do not think the evidence supports the conviction. In fact, we are of the opinion that the conviction is contrary to the evidence; wherefore the judgment is reversed and the cause is remanded.

*Reversed and remanded.*